IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
GERALDINE SARAN              )
                            )
          Plaintiff,        )
v.                          )    CIVIL ACTION No.
                            )    1:05-CV-727
FRANCIS J. HARVEY,          )
Secretary of the Army       )
                            )
          Defendant.        )
```

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Defendant Francis J.
Harvey, Secretary of the Army's (hereinafter "Secretary Harvey")
Motion to Dismiss, or in the Alternative, Motion for Summary
Judgment.  This case concerns allegations by Geraldine Saran
(hereinafter "Ms. Saran"), a former employee of the United States
Army (hereinafter "the Army"), that the Army discriminated
against her based upon her gender, age, and the fact that she is
married to a foreign national.  Plaintiff alleges further that
she was forced to work in a hostile work environment while
employed by the Army.  Ms. Saran's allegations center primarily
around the non-extension of her employment with the Army in
August of 1990 and an allegedly hostile work environment from
1988 through 1990.  Plaintiff claims that such events caused her
severe emotional distress, and she seeks back pay with benefits,
reimbursement of certain expenses, and various damages.

The issues before the Court are (1) whether the Court should
dismiss Plaintiff's Second Amended Complaint for failing to state

a claim upon which relief can be granted because Plaintiff failed
to initiate contact with an Equal Employment Opportunity
(hereinafter "EEO") Counselor within thirty (30) days of the
alleged adverse actions, and (2) in the alternative, whether the
Court should grant summary judgment to Defendant because
Plaintiff does not make out a *prima facie* case for any of her
claims, and Plaintiff cannot rebut the Army's legitimate,
nondiscriminatory explanations for the allegedly discriminatory
actions.  The Court (1) dismisses Plaintiff's Second Amended
Complaint because Plaintiff failed to consult with an EEO
counselor within thirty (30) days after the alleged acts of
discrimination, and (2) in the alternative, grants Defendant's
Motion for Summary Judgment because Plaintiff fails to establish
a *prima facie* case for any of her claims and cannot rebut the
Army's legitimate, nondiscriminatory explanations for the
allegedly discriminatory actions.

## I. BACKGROUND

<u>Employment History</u>

Plaintiff began her employment with the Army in April of
1976 when she was hired as a Secretary for the Chief of the Joint
United States Military Mission to Turkey (hereinafter "JUSMMAT").
Plaintiff's employment was for a term of two years, subject to
successive two-year extensions.  (*See* Br. of Def. Supp. Mot.
Summ. J. at 3, (hereinafter "Def.'s Br.").)  After being promoted

to the GS-7 level in 1980, Plaintiff became subject to a five-year limitation on overseas foreign service. (*Id.*) Her continued employment past the five-year limitation was subject to periodic extensions of her term of employment at the request of her supervisors. (*Id.*) Plaintiff has admitted that her employment with the Army would end if her supervisor decided that he did not want to extend Plaintiff's term of employment.

In September of 1989, Ms. Saran admitted that Major General Fred E. Elam (hereinafter "MG Elam") was angry with Ms. Saran for failing to inform Colonel Chandler P. Robbins (hereinafter "COL Robbins") that MG Elam had an appointment with the Turkish general staff's general. (*See id.* at 4.) After this meeting, Ms. Saran admitted that she was very upset and she no longer saw any point in staying in her position. (*See id.*) MG Elam gave her a resignation form to effectuate her wishes. (*See id.*)

In addition to Ms. Saran's apparent desire to leave the position, MG Elam stated that Plaintiff's performance fell below the standard expected of an executive secretary in her position, and MG Elam sought a more professional, better qualified individual for Ms. Saran's position. (*See id.*) MG Elam felt that Ms. Saran did not work well as part of a team, and MG Elam could not trust her with sensitive information. (*Id.*) Ms. Saran would respond reluctantly to MG Elam's requests for assistance instead of being a self-starter. (*See id.* at 4-5.) MG Elam

expected Plaintiff to look ahead and anticipate things that needed to be done instead of constantly responding to situations. (*See id.* at 5.)  On February 15, 1990, MG Elam notified her that he would not extend her employment beyond the expiration of her current term.  (*Id.* at 4.)  Ms. Saran's term of employment expired on August, 22, 1990.  (*Id.*)

Allegations of Harassment

Ms. Saran alleges that a military member, Sergeant Pederson, called Ms. Saran complaining about the way Ms. Saran managed the staff calendar.  Sergeant Pederson told Ms. Saran that the general needed a younger secretary, and Ms. Saran indicated that she agreed with such a statement.  (*See* Def. Ex. (hereinafter "DEX") 4, p. 47.)  Ms. Saran alleges that COL Robbins asked another staff member, "How are you coming along with getting the general a younger secretary?"  (*Id.* at p. 51.)  Ms. Saran also alleges that COL Robbins asked her, "When are you leaving? Whenever it is, it is not soon enough."  (*Id.*)  When asked how this comment related to her gender, age, or the national origin of her spouse, Plaintiff replied, "Probably it's not related. It's probably just hostile environment."  (DEX 1, p. 27.)  Ms. Saran admitted that she did not speak to anyone, including MG Elam, about the alleged statements of COL Robbins.  (DEX 4, p. 52-53.)

Review of Security Clearance and Investigation of Suspected
Security Violations

Plaintiff alleges that COL Robbins questioned how Plaintiff
could have a security clearance when she had a Turkish husband.
(Def.'s Br. at 6.)  The Army makes its security clearance
determinations based upon all the available evidence.  (*See* Army
Regulation 380-67, ¶ 2-200.)  One factor that the Army considers
in this analysis is "the presence of immediate family members or
other persons to whom the applicant [for security clearance] is
bonded by affection or obligation in a nation. . . whose
interests may be inimical to those of the United States."  (*Id.*)

Ms. Saran claims that she was treated differently than males
when she and male military members were investigated for alleged
security violations.  (*See* Pl.'s Compl. at 6.)  Plaintiff had two
suspected violations, one predating MG Elam's arrival at JUSMMAT
and a second suspected violation after MG Elam's arrival.  (*See*
Def.'s Br. at 7.)  Ms. Saran claims that MG Elam denied her an
incentive award recommended by Ms. Saran's previous supervisor.
(*See* Pl.'s Compl. at 6.)  Ms. Saran was being investigated for
her first suspected security violation during the processing of
the incentive award.  (*See* DEX 7.)  Because of the outstanding
security investigation, the awards committee decided to hold Ms.
Saran's incentive award in abeyance.  (*Id.*)

MG Elam directed an officer to conduct a full and impartial

investigation of Ms. Saran's second suspected security violation
pursuant to applicable Army regulations.  (DEX 5, p. 209.)  The
suspected violation centered around allegations that a safe
containing classified material was left unlocked.  (*Id.* at p.
210.)  The officer in charge of the investigation determined that
both Plaintiff and CPT Warren Lowman (hereinafter "CPT Lowman")
had not acted as appropriately as possible.  (*Id.*)  The
investigator determined that, as a military officer, CPT Lowman
had greater responsibility for the unlocked safe.  (DEX 8.)
Because no classified information had been compromised, MG Elam
decided not to discipline either Plaintiff or CPT Lowman.
(Def.'s Br. at 8.)

Review of Benefits

Plaintiff alleges that the Army discriminated against her
when her supervisors questioned the benefits that Plaintiff
received, but did not investigate similarly situated employees.
(*See* Pl.'s Compl. at 5.)  MG Elam directed Captain Huxford to see
whether Plaintiff was receiving the correct military department
store and military grocery store privileges.  (DEX 5, p. 247.)
The investigation determined that Plaintiff's benefits were
correct and MG Elam considered the matter closed.  (*See id.* at p.
248.)

The similarly situated employees to whom Plaintiff compares herself regarding the investigation of benefits were "civilians working in Ankara, and they were serviced by the serving CPO office. And not all of them were actual employees of JUSMMAT." (DEX 1, p.30.) Plaintiff cannot identify these employees by name, and she admitted that they worked in the JUSMMAT building but were not JUSMMAT employees. (*See id.* at p. 31.)

Ordinary Resident Status

Plaintiff claims that she was discriminated against when she was determined to be an "ordinary resident" when similarly situated employees were determined to be "not ordinarily resident." (*See* Pl.'s Compl. at 6.) Plaintiff's status under the Status of Forces Agreement was reviewed numerous times during the course of her employment. (Def.'s Br. at 9.) Doyle Gaddis, in an affidavit, noted that an "ordinary resident" is an individual living in a foreign country of their own free will, who owns property, pays taxes, and shows no evidence of returning to the United States. (DEX 10, Affidavit of Doyle Gaddis.) The ordinary resident may or may not be married to a foreign national. (*Id.*)

The Army considered Plaintiff not ordinarily resident as long as the Army employed her in Ankara. (*Id.*) Plaintiff claims that Colonel Frank Luna, Major James Moore, and Mr. Doyle Gaddis determined that Plaintiff qualified as an ordinary resident.

(DEX 1, p. 22.)  Both Colonel Luna and Major Moore are Air Force
personnel and not employed by the Army.  (*Id.*)  Mr. Gaddis, the
Director of the Civilian Personnel Office, provided a sworn
statement that he never stated that Plaintiff qualified as
"ordinarily resident."  (DEX 10.)

Pursuant to a Command Inspection Report of August 29, 1989,
Plaintiff was determined to be an "ordinary resident" of Turkey,
even though at the time of her hiring she was determined to be
"not ordinarily resident."  (DEX 11.)  The Command had determined
that Plaintiff should be allowed treatment as "not ordinarily
resident" during her term of employment, even if she had lived in
Turkey on her own free will prior to seeking employment with the
Army.  (DEX 12.)  Plaintiff admits that she has no evidence that
MG Elam had any involvement in determining that others would be
considered "not ordinarily resident."  (DEX 1, p. 46.)  Plaintiff
could not tell whether the male employees to whom she compares
herself regarding her "ordinary resident" status even worked at
JUSMMAT or for MG Elam.  (DEX 1, p. 45.)

Alleged Knowledge of Hostile Work Environment by Management

Plaintiff alleges that she informed MG Elam of an alleged
hostile work environment in a written grievance in August of
1989.  (DEX 1, p. 36.)  Notwithstanding this fact, Ms. Saran
admitted that COL Robbins did not make any derogatory remarks to
Ms. Saran after COL Robbins accused Ms. Saran of smoking in the

women's locker room sometime in early 1989.  (DEX 1, p. 28.)  Ms. Saran admits that MG Elam responded to the written grievance by stating that he would not tolerate any harassment within his headquarters.  (DEX 1, p. 36.)

Plaintiff's grievance never stated that the Army discriminated against her based upon her gender, age, or the national origin of her husband.  (*See* DEX 13.)  MG Elam testified that Plaintiff's complaints were not evidence of a hostile work environment based upon discrimination, but merely that Plaintiff and COL Robbins could not get along with each other.  (DEX 15, p. 219.)

Procedural History

Ms. Saran filed a series of EEO complaints regarding her employment at JUSMMAT.  (Pl.'s Compl. at 3, ¶ 7.)  After Plaintiff's initial Complaint was transferred to this Court, the Court granted Plaintiff's request to file a Second Amended Complaint on September 16, 2005.  Defendant served Plaintiff with his Request for Admissions on October 7, 2005.  Plaintiff failed to file her objections to the Defendant's Request for Admissions within fifteen (15) days as required by Local Rule 26(c).  On October 31, 2005, Plaintiff served the following response to Defendant's Request for Admissions: "In relation to all of the following (1-13) admissions, Plaintiff cannot respond in blanket, absolute terms of 'admit' or deny.'  Also the requests are overly

9

broad and/or vague." (DEX 15.) Request for Admission 8 states: "Admit that under the facts of your employment, the Defendant [sic] had legitimate, nondiscriminatory reasons for the employment decisions relating to your allegation." (DEX 14.) Plaintiff failed to deny this allegation in her response to Request for Admission #8.

## II. DISCUSSION

### A. Standard of Review

<u>Failure to State a Claim</u>

A Federal Rule of Civil Procedure 12(b)(6) motion should not be granted unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of the plaintiff's claim that would entitle the plaintiff to relief. FED. R. CIV. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Conclusory allegations regarding the legal effect of the facts alleged need not be accepted. *See Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual

basis sufficient to allow the defendants to prepare a fair response. *Conley*, 355 U.S. at 47.

<u>Summary Judgment</u>

Under Rule 56(c), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).  In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1996).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 248.  A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *Anderson*, 477 U.S. at 248.  "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

## B. Analysis

Failure to State a Claim

The Court dismisses Plaintiff's Second Amended Complaint because Plaintiff failed to exhaust all available administrative remedies before filing a claim in federal court.  A federal employee must exhaust all available administrative remedies before bringing an employment discrimination claim to court.  *See Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (writing that "[b]efore a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC"); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247-48 (4th Cir. 2000).  Under EEOC regulations regarding Title VII, aggrieved persons who believe they have been discriminated against on the basis of a protected

12

characteristic must consult a Counselor prior to filing a
complaint.  *See* 29 C.F.R. § 1614.105(a)(1).  An aggrieved person
must initiate contact with a Counselor within forty-five (45)
days of the allegedly discriminatory incident or in the case of
personnel action, within forty-five (45) days of the effective
date of the action.  *See id.*[1]  Failure to consult with an EEO
Counselor within the required time period is grounds for
dismissing a plaintiff's Title VII claim in federal court.  *See*
*Webster v. Johnson*, 126 Fed. App'x 583, 586-87 (4th Cir. 2005);
*Zografov v. V.A. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985).

Here, Plaintiff initiated contact with an EEO counselor in
July of 1990.  (DEX 16.)  Although Plaintiff's Second Amended
Complaint fails to indicate the date of many of the alleged
adverse actions of which Plaintiff complains, Plaintiff knew of
the denial of her incentive award by August 1, 1989, at the
latest because she included it in her grievance.  (DEX 13.)  The
security investigations of which Plaintiff complains occurred on
or before October and November of 1989.  (DEX 7 & 8.)  At the
least, there is an eight month gap between when Plaintiff was
aware of these events and when she initiated contact with an EEO
counselor.  Because Plaintiff failed to initiate contact with the

---

1 At the time that Plaintiff initiated her EEO complaint,
the relevant EEO regulations required her to contact a Counselor
within thirty (30) days of the allegedly discriminatory act.  *See*
29 C.F.R. § 1613.214(a)(1); 32 C.F.R. § 588, Appendix A (revised
as of July 1, 1990).

EEO office within thirty (30) days of these events, she failed to exhaust her administrative remedies in a timely fashion, and the Court, therefore, dismisses Plaintiff's Second Amended Complaint.

Summary Judgment

### 1. ADEA

The Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Age Discrimination in Employment Act (hereinafter "ADEA") claims because Plaintiff cannot show a genuine issue of material fact, and Defendant is entitled to judgment as a matter of law.  To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show that: (1) she is a member of a protected class; (2) she was discharged; (3) at the time of her discharge, she was performing at a level that met her employer's legitimate expectations; and (4) she was replaced by someone of comparable qualities who was outside of her protected class.  *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996).  Such a *prima facie* case only raises an inference of discrimination, which the employer can rebut by presenting legitimate, non-discriminatory reasons for the termination.  *Id.* If the employer rebuts the employee's inference of age-based discrimination, the employee can still prevail by demonstrating by a preponderance of the evidence that the defendant's supposed reason was merely a pretext for discrimination.  *Id.*  In order to do so, the plaintiff must show that age was the more likely

reason for the dismissal or that the employer's proffered reason is unworthy of credence. *Id.* The burden of persuasion remains with the plaintiff throughout. *Id.*

Here, Plaintiff is a member of a protected class because she is over the age of forty. *See* 29 U.S.C. § 631(a). As to the second prong, Plaintiff technically was not discharged, but instead, the Army decided not to renew Plaintiff's term of employment. Nevertheless, the Army made an affirmative decision regarding Plaintiff's employment status which affected the terms, conditions and benefits of Plaintiff's employment. *See Peary v. Goss*, 365 F. Supp. 2d 713, 722 (E.D. Va. 2005) (noting that "a discriminatory act must adversely affect the terms, conditions, or benefits of the plaintiff's employment to be actionable"). Assuming, *arguendo*, that the failure to extend the term of Plaintiff's employment does not qualify as a "discharge," Plaintiff was not performing at a level that met her employer's legitimate expectations nonetheless. Plaintiff failed to inform MG Elam of an important appointment; MG Elam said that Plaintiff failed to perform at the level of an executive secretary; Plaintiff did not work well as part of a team; MG Elam could not trust her with sensitive information; and MG Elam did not consider Plaintiff a self-starter. This evidence suggests that Plaintiff's performance did not meet her employer's legitimate expectations for an individual in her position. As to the fourth

16

prong, the Army did select a woman younger than Plaintiff to succeed Plaintiff.  However, assuming that Patricia Watford (hereinafter "Watford") began her employment the day after Plaintiff was "discharged," Watford was only three weeks away from entering into a protected class for her age as well.  (*See* Pl.'s Second Am. Compl. at 6 (noting that Plaintiff's term of employment ended on or about August 22, 1990 and Patricia Watford's date of birth is September 13, 1950)).  Thus, although Watford technically was outside of Plaintiff's protected class, she was only outside of the protected class for three weeks following Plaintiff's discharge.  However, Watford certainly did not begin her employment on August 23, 1990, because the Army hired a secretary briefly in between Plaintiff and Watford's terms of employment.  Thus, it seems likely that Watford was forty (40) years old when she began her employment with the Army, meaning that the Army did not replace Plaintiff with someone outside of Plaintiff's protected class.  Because Plaintiff cannot make out a *prima facie* case of age discrimination under ADEA, the Court grants Defendant's Motion for Summary Judgment regarding Plaintiff's age discrimination claims.

Even if Plaintiff could make out a *prima facie* case of age discrimination, Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reasons for Plaintiff's termination. Defendant made its decision not to renew Plaintiff's term of

employment because her performance was not what was expected of an executive secretary in her position.  Plaintiff also did not work well as part of a team, MG Elam felt that he could not trust her with sensitive information, and Plaintiff would respond reluctantly to MG Elam's requests for assistance instead of acting affirmatively.  (*See* DEX 5, OCI Testimony of MG Elam, p. 211-12.)  Furthermore, because Plaintiff had two possible security violations, the Army had a legitimate, non-discriminatory reason for reviewing Plaintiff's security clearance.  Holding Plaintiff's supposed cash incentive award in abeyance during the investigation of Plaintiff's possible security violations was also based on a legitimate, non-discriminatory reason.

## 2.  Title VII

The Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claims because Plaintiff cannot establish a *prima facie* case of discrimination.  To establish a prima facie case of discrimination under Title VII, a plaintiff must show by a preponderance of the evidence that, (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected

class.  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*,  354 F.3d
277, 285 (4th Cir. 2004); *see also McDonnell Douglas Corp. v.
Green*, 411 U.S. 792 (1973); *Miles v. Dell, Inc.*, 429 F.3d 480,
486 (4th Cir. 2005).  Once a plaintiff establishes a *prima facie*
case of discrimination, the burden shifts to the employer to
articulate a legitimate non-discriminatory reason for the adverse
employment action.  See *Texas Dep't of Community Affairs v.
Burdine*, 450 U.S. 248, 252-53 (1981).  Should the employer meet
this burden, to prevail on her claim, the plaintiff employee must
prove by a preponderance of the evidence that the legitimate
reasons offered by the defendant employer were mere pretexts for
discrimination.  *Id*. at 253.

### a. Disparate Treatment

#### 1. Gender

Plaintiff cannot establish a *prima facie* case of disparate
treatment based on her gender.  To establish a *prima facie* case
for disparate treatment under Title VII, a plaintiff must show
that: (1) she is a member of a protected class; (2) she was
subjected to some adverse personnel action; and (3) other
similarly situated employees outside of her protected class were
treated differently.  *See Cook v. CSX Transp. Corp.*, 988 F.2d
507, 511 (4th Cir. 1993).  Once a plaintiff establishes a *prima
facie* case of discrimination, the burden shifts to the employer
to articulate a legitimate non-discriminatory reason for the

18

adverse employment action.  See *Burdine*, 450 U.S. at 252-53. Should the employer meet this burden, to prevail on her claim, the plaintiff employee must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant employer were mere pretexts for discrimination.  *Id*. at 253.

Here, Plaintiff is a member of a protected class because she is a woman.  Plaintiff was subjected to an adverse personnel action because the Army made the affirmative decision not to renew Plaintiff's term of employment which had negative financial consequences for Plaintiff, thus affecting the terms, conditions, and benefits of her relationship with the Army.  *See Peary v. Goss*, 365 F. Supp. 2d 713, 722 (E.D. Va. 2005) (noting that "a discriminatory act must adversely affect the terms, conditions, or benefits of the plaintiff's employment to be actionable").

However, Plaintiff fails to meet the third prong of the test for disparate treatment under Title VII because she cannot establish that the Army treated other similarly situated employees outside of Plaintiff's protected class differently than it treated Plaintiff.  The Army replaced Plaintiff with an individual in her protected class, a female.  Even though Plaintiff claims that the Army treated males differently when investigating alleged security violations, she admits that both she and a male were investigated during her second alleged security violation, and that, ultimately, both were exonerated.

In fact, in that incident, an investigator determined that CPT Lowman, a male military officer, had priority over Plaintiff in regard to responsibility for the safe because of his officer status.  (DEX 8.)  Plaintiff also has produced no evidence that the male employees whom she alleges were "not ordinarily resident" lived in Turkey prior to accepting a position with the Army.  By contrast, Plaintiff had lived in Turkey for four years prior to working for the Department of Defense.  Furthermore, Plaintiff cannot establish that the males to whom she compares herself regarding her "ordinary resident" status were even employees of JUSMMAT.  (DEX 1, p. 30-31, 45-46.)  Finally, Plaintiff cannot produce any evidence that similarly situated Army employees outside her class received incentive awards and higher performance evaluations.

Thus, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's gender discrimination claim because Plaintiff cannot prove that her employer treated similarly situated employees outside of her protected class differently than Plaintiff.

### 2. Nationality of Plaintiff's Spouse

Plaintiff satisfies the *prima facie* test for disparate treatment based upon the nationality of her spouse, but Plaintiff cannot rebut Defendant's legitimate non-discriminatory reasons for the Army's employment decision.  To establish a *prima facie*

case for disparate treatment under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse personnel action; and (3) other similarly situated employees outside of her protected class were treated differently. *See Cook*, 988 F.2d at 511. Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. See *Burdine*, 450 U.S. at 252-53. Should the employer meet this burden, to prevail on her claim, the plaintiff employee must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant employer were mere pretexts for discrimination. *Id*. at 253.

Here, Plaintiff belongs to a protected class because federal law makes clear that employers cannot discriminate against employees based on an employee's spouse's protected characteristic. *See* 29 C.F.R. § 1606.1 (noting that the EEOC will apply general Title VII principles when examining claims that individuals have been denied equal employment opportunity because of marriage to persons of a particular national origin group). Just as in an interracial marriage between an African-American spouse and a Caucasian spouse, Plaintiff claims that the Army discriminated against her because she has a Turkish husband. *Cf.*, *e.g.*, *Clark v. Louisa County Sch. Bd.*, 472 F.Supp. 321, 324

(E.D. Va. 1982) (noting that a complaint that alleges discrimination based upon the race of a spouse suffices to satisfy a *prima facie* test).  Plaintiff thus satisfies the first prong of the *prima facie* test.  As noted above, Plaintiff was subject to an adverse personnel action, thus satisfying the second prong of the *prima facie* test.   Plaintiff satisfies the third prong of the *prima facie* test because she claims that the Army treated military members outside of her protected class differently than it treated Plaintiff when the Army classified Plaintiff as "ordinarily resident" in Turkey and chose not to use this classification for other military members.  (*See* Pl.'s Compl. at 6.)  Plaintiff claims that the Army based this decision, in part, on the national origin of Plaintiff's spouse. (*Id.*)

Plaintiff, however, cannot rebut Defendant's legitimate, non-discriminatory reasons for the Army's employment decisions because Plaintiff offers little to no evidence that the Army's explanations for its employment decisions were mere pretexts for discrimination based on the national origin of Plaintiff's spouse.  Regarding the investigation of Plaintiff's security clearance, Plaintiff had a possible security violation before MG Elam's arrival.  (*See* DEX 5, p. 210.)  The presence of a second alleged violation provided the Army with a legitimate, non-discriminatory reason to review Plaintiff's security clearance.

22

(DEX 7.)  Additionally, the Army asserts that the merit awards board held in abeyance any cash award due to Plaintiff because of the pending investigation of Plaintiff's alleged security violations.  (*See* DEX 7.)  This is a legitimate explanation for holding Plaintiff's cash award that is not based on any discriminatory intent.  Plaintiff offers no evidence that this proffered explanation for holding her incentive award in abeyance was a pretext for discrimination based on her husband's national origin.  Furthermore, the Army deemed Plaintiff "ordinarily resident" in Turkey after her employment term with the Army had ended.  (*See* Def.'s Br. at 20.)  Such a determination, made after Plaintiff's term of employment had ended, seriously weakens the argument that the Army failed to extend Plaintiff's term of employment because of the national origin of her spouse.  Lastly, Plaintiff cannot rebut Defendant's non-discriminatory reasons for failing to extend Plaintiff's term of employment with the Army.  Defendant claims that the Army based such a decision on insufficient job performance, not the national origin of Plaintiff's spouse.  Plaintiff explicitly told MG Elam that she wanted to find another position; MG Elam felt that Plaintiff did not work well as part of a team, and MG Elam could not trust Plaintiff with sensitive information; and Plaintiff reluctantly responded to MG Elam's requests for assistance instead of being a self-starter.  (*See* DEX 4, p. 38, 42; DEX 5, p. 211, 213, 214.)

All of the preceding, taken together, provides ample evidence
that the Army chose not to extend Plaintiff's term of employment
because of insufficient performance, rather than because of
discrimination.  The Court grants Defendant's Motion for Summary
Judgment because Plaintiff cannot rebut Defendant's legitimate,
non-discriminatory reasons for the Army's actions, and Plaintiff
does not prove that Defendant's proffered explanations were
pretexts for discrimination.

### b. Hostile Work Environment

Plaintiff cannot establish a *prima facie* case that she faced
a hostile work environment.  To establish a *prima facie* case for
a hostile work environment under Title VII, a plaintiff must
prove that the offending conduct: (1) was unwelcome; (2) was
based upon a protected characteristic; (3) was sufficiently
severe or pervasive to alter the conditions of employment and
create an objectively abusive work environment; and (4) was
imputable to the employer.  *See Ocheltree v. Scollen Prods.,
Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc); *Beall v.
Abbott Labs.*, 130 F.3d 614, 620-21 (4th Cir. 1997).  Title VII
does not guarantee freedom from insensitive remarks that do not
create an objectively abusive work environment.  *Beall*, 130 F.3d
at 620-21.

Here, Plaintiff cites several incidents that form the basis
of her hostile work environment claim.  Plaintiff heard several

24

comments asking when Plaintiff would be leaving; COL Robbins questioned Plaintiff's loyalty to the United States; COL Robbins questioned how Plaintiff could have a security clearance when she had a Turkish husband; COL Robbins referred to Plaintiff as an "old bag" or an "old hag;" COL Robbins said "that old Saran is married to a Turkish guy and how does she have security clearance;" COL Robbins referred to Plaintiff as a "selfish old woman;" COL Robbins asked Plaintiff, "When are you leaving? Whenever it is, it is not soon enough;" and COL Robbins commented that "like bad news, Mrs. Saran does not improve with age." (*See* Pl.'s Compl. at 5-8.)  The Court assumes that all of the aforementioned conduct was unwelcome, thus establishing a *prima facie* case for a hostile work environment claim.  However, the alleged harassment was not based upon Plaintiff's age, gender, or the national origin of her spouse.  In order for a plaintiff to avail herself of facially neutral incidents, there must be a showing that the incidents were in fact discriminatory.  *See Cook v. Dep't of Educ.*, 2004 U.S. App. LEXIS 1581, at *3-4 (2d Cir. 2004).  Insulting comments, even if directed at the plaintiff because of her inclusion in a protected class, do not suffice to meet the second prong of the *prima facie* test.  *See Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (noting that "[a]n insulting or demeaning remark does not create a federal cause of action for [] harassment merely because the

25

'victim' of the remark happens to belong to a class protected by Title VII"). Plaintiff offers conclusory statements that certain remarks and actions were based upon her age, gender, and the nationality of her spouse, but offers no evidence that, but for these characteristics, these statements or actions would not have occurred. *See id.* at 772 (clarifying that an employee is harassed because of a protected characteristic if, but for the characteristic, the harassment or discrimination would not have occurred).

Furthermore, the conduct that Plaintiff alleges is not sufficiently severe or pervasive to alter the terms of her employment with the Army. Plaintiffs can show a violation of Title VII when the workplace is permeated with insults, intimidation, and ridicule that alters the conditions of employment and discourages employees from remaining on the job. *See Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). Conduct must be extreme to amount to a change in the terms and conditions of employment, and courts have made it clear that Title VII does not mandate a general code of civility. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). As a further means of analysis, the Fourth Circuit examines: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's job

performance.  *See Ocheltree*, 335 F.3d at 333.  Here, Plaintiff alleges sporadic actions by her employer that ceased after MG Elam intervened and made clear to his staff that he would not tolerate such conduct.  Although the Court acknowledges the insensitivity and thoughtlessness of the conduct that Plaintiff describes in her Complaint, the conduct does not indicate the necessary severity to establish a hostile work environment claim. Plaintiff does not allege that any single incident was physically threatening, and the alleged incidents were too infrequent to qualify as severe or pervasive.  If an employer's repeated yelling at an employee does not qualify as an abusive or hostile work environment, offhand remarks asking when the plaintiff would be replaced and whether MG Elam had found a younger replacement do not qualify either.  *Cf. Beall*, 130 F.3d at 620-21 (holding that, where an employer had screamed at the employee more than once, the plaintiff's claim still fell far short of the necessary intensity to meet the standard to establish a hostile work environment).  *See generally Faragher*, 524 U.S. at 788 (noting that simple teasing or offhand comments, **unless extremely serious**, will not suffice to establish a hostile work environment claim) (emphasis added).  Plaintiff's Complaint only outlines the type of "non-actionable office unpleasantries" that Title VII does not forbid.  *See von Gunten v. Maryland*, 243 F.3d 858, 870 (4th Cir. 2001).  Plaintiff also does not allege that the alleged

27

conduct interfered with her work.  In fact, Plaintiff admits that she was upset at herself for failing to inform MG Elam of a meeting, and after this omission, she saw no reason to remain in her position.  (DEX 4, OCI testimony of Plaintiff, p.38.)

Finally, Plaintiff cannot impute liability for the alleged actions to her employer.  An employer is liable for a hostile work environment created by an employee only if the employer knew or should have known of the conduct and failed to take proper action.  *See Andrade v. Mayfair Mgmt., Inc.*, 88 F.3d 258, 261 (4th Cir. 1996).  Here, Plaintiff admitted that she told no one about the statements she overheard COL Robbins make.  (DEX 4, p.49, 52-53.)  Plaintiff specifically stated that she did not tell MG Elam about this.  (*Id.*)  There is no evidence that MG Elam, Plaintiff's supervisor, knew or should have known of any harassment based on one of Plaintiff's protected characteristics. Plaintiff admitted that, once MG Elam became aware of Plaintiff's allegations, MG Elam promised that he would inform his staff that unfair harassment would not be tolerated and that all JUSMMAT personnel would be fully compliant.  (DEX 1, p.36.)  No evidence indicates that COL Robbins made any allegedly harassing statements after MG Elam became aware of the issue.  Thus, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's hostile work environment claim because Plaintiff cannot establish a *prima facie* case for this claim.

28

### III. CONCLUSION

The Court (1) dismisses Plaintiff's Second Amended Complaint because Plaintiff failed to consult with an EEO counselor within thirty (30) days after the alleged acts of discrimination, and (2) in the alternative, grants Defendant's Motion for Summary Judgment because Plaintiff fails to establish a *prima facie* case of any of her claims and cannot rebut the Army's legitimate, nondiscriminatory explanations for the allegedly discriminatory actions.

For the foregoing reasons, it is hereby

ORDERED that Defendant Francis J. Harvey, Secretary of the Army's Motion to Dismiss, or in the Alternative for Summary Judgment is GRANTED.

The clerk is directed to forward a copy of this Order to counsel.

Entered this _17___ day of April, 2006.


_____/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
04/17/06

29